UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Duane Ziemba,
    Plaintiff,

    v.

Ann Lynch, et al.,
    Defendants.

No. 3:10cv717 (SRU)

RULING ON MOTION TO DISMISS AND FOR SANCTIONS

    Pro se plaintiff Duane Ziemba brought this action under 42 U.S.C. § 1983 against a group of officers at Northern Correctional Institute ("NCI"), commissioners at the Connecticut Department of Corrections ("DOC"), and an assistant attorney general. Ziemba alleges that those government officials conspired to deprive him of access to the courts. As part of a motion for a preliminary injunction, Ziemba submitted copies of two purported DOC memos in which high-ranking NCI officers instructed staff to seize Ziemba's legal materials, and to do everything in their power to bring Ziemba's lawsuit to a stop. *Doc. # 29.* Defendants responded by filing a motion to dismiss and motion for sanctions alleging not only that both memos were forgeries, but also that Ziemba created the memos in an effort to defraud this court. A three-day evidentiary hearing followed in which I heard testimony regarding the memos' authenticity and authorship.

    After careful review of the evidence, I grant in part and deny in part defendants' motion to dismiss and for sanctions. Although the memos are clearly doctored versions of official documents, the defendants have failed to prove by clear and convincing evidence that Ziemba created them. Because Ziemba could have reasonably believed that NCI officials authored the memos, he did not act in bad faith when he appended them to his

1

request for a preliminary injunction. Thus, I decline to dismiss his complaint on that ground, or to sanction him for defrauding the court. Defendants three alternative grounds for partial dismissal, however, have merit.

I.      DISCUSSION

*Dismissal as a Sanction*

A district court has the "inherent power to sanction parties" in order to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Revson v. Cinque & Cinque*, 221 F.3d 71, 78 (2d Cir. 2000). Dismissal is a particularly "harsh sanction" and is only "appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Defendants in this case point to plaintiff's submission of falsified documents as evidence of his bad faith. But to prove a fraud upon the court, a party must "establish . . . by clear and convincing evidence that a[n opposing] party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010). And here, defendants have not provided enough of a factual basis from which to find that Ziemba had the opportunity or the means to forge official documents. Without more, I cannot find that Ziemba acted in bad faith or dismiss his claim as a result.

*A. The Fraudulent Memos*

The memos at issue look official, but read like awkward imitations. Both documents are emblazoned with official seals and fonts. They bear signatures, and one of the memos has a bold stamp marking it "RECEIVED." But once read, they sound too

good (from Ziemba's point of view) to be true. The memo dated September 30, 2009 ("the September memo") advises elliptically that "we reached the conclusion that inmate Ziemba to be permitted in the continuance of his course of litigation against our Department would not be an option," before commanding rather formally that "with no delay deprive him of his legal work and law books." It ends with a smoking gun: "Mr. Murphy agrees that to deny him court access will be less damaging than permitting him to run in his course of litigation." Though shorter, the memo dated October 18, 2009 ("the October memo") uses similarly stilted diction. "Attached is the correspondence by Lieutenant Siwicki a corrective action and control of inmate litigation I concur with the attached recommendations." On the stand both purported authors confirmed what is obvious from the memos' words— they do not use such formal wording in notes to other officers, and they would never commit a naked admission of illegal conduct to writing.

Even had the memos sounded more authentic, defendants' expert pointed to physical indications that they were forged, and I find his testimony entirely credible. Greg Kettering, a forensic scientist who specializes in handwriting analysis, testified that both documents bore hallmarks of forged documents. Kettering testified that no one signs his signature exactly the same way twice. In other words, the only way for two signatures to be identical is for one to be a copy of the other. Otherwise, a side-by-side comparison would reveal minor variations. The September and October memos were allegedly authored by Brian Siwicki and Angel Quiros. Kettering compared Siwicki and Quiros' signatures on those suspicious memos with signatures on two memos that Siwicki and Quiros admitted to writing. Kettering testified that the signatures on both sets of memos—the ones on the suspect memos, and control signatures taken from real

memos— were eerily similar; they had the same stray ink splotches left by a leaky pen, the same thick wall blunting the circle in the number nine, the same dot positioned in the same spot over an "I." Kettering concluded that such synchrony is impossible, and that one signature must be a photocopy of the other. I find no reason to doubt his opinion, and find both that someone forged the September and October memos, and that they used actual dispatches from Siwicki and Quiros to do so.

### B. *The Means and Opportunity to Forge a Document*

Defendants elide two issues – whether a document is a fake, and whether Ziemba intended to dupe the court by faking a document. But the two inquiries are different— even if Ziemba submitted forged documents, it does not follow that he doctored them. Indeed, for one of the memos in question, nothing in the evidence presented indicates that Ziemba had either the means or the opportunity to falsify it.

The October memo is a cover letter written by Warden Angel Quiros to Deputy Warden Steven Faucher. The memo instructs Faucher to adopt a proposed corrective action against Ziemba in order to "control . . . inmate litigation." *Def. Ex. 4-B*. Greg Kettering testified that this memo was a forgery. According to Kettering, someone lifted the memo's signature from a similar Quiros missive that instructed Faucher to tighten security after a set of keys went missing. *Def. Ex. 5-A*. Whoever fabricated the October memo, then, had to have access to Quiros' instructions about the keys. And there is no way that Ziemba could have gained access to the official documents from which the October memo was fabricated.

From September 2009 to September 2010, Ziemba was held in "administrative segregation" at NCI. Administrative segregation is like solitary confinement – inmates

4

are housed alone, must have an escort whenever they leave their cells, and do not have access to computers or libraries. Quiros testified that he stored his internal memos in a locked filing cabinet, and that only three people, Faucher, Deputy Warden Lauren Powers, and his secretary, had access to the cabinet. It is difficult to imagine how Ziemba— a prisoner monitored at all times, with little contact with others outside of corrections officers— could have gotten his hands on a document locked in a filing cabinet in the warden's office. Indeed, I find that he could not have gained access to such a document.

Even if he had, Ziemba would have faced a second hurdle— transforming a memo about keys into a memo about violating constitutional rights. The October memo contains typed text that ordered a lower officer to seize legal materials. The text is perfectly centered under the document's header listing the sender, recipient, and date. To substitute old text for new, the forger had to type out a new directive, print it, cut the text out, center it exactly, paste it, and then photocopy the new memo enough times to erase telltale edges and shadows from glued layers of paper (or perform equivalent steps on a computer). On the stand, Warden Quiros admitted that that the only office supply Ziemba could have access to during his time at NCI was the one flexible pen with which he wrote letters. Given these constraints, I find that Ziemba could not have forged the documents from inside the prison.

Defendants argued that Ziemba could have sent instructions on how to doctor the memos to his mother Pamela Ziemba, hiding them in envelopes mismarked legal mail. But on the stand, Pamela Ziemba testified that she did not own a computer or printer, nor did she ever use either with any frequency. I find her testimony credible. In addition,

there is no evidence in the record that she has any experience with manipulating documents, such that she could produce a convincing replica, one with perfectly centered text and free of shading from copying spliced documents with hard edges. She testified that she has only ever used a copier to copy large stacks of paper. In short, defendants failed to present clear and convincing evidence that Pamela Ziemba had the skill necessary to produce forged documents. With this lack of evidence in mind, I find that Duane Ziemba did not forge the October memo.

Given that Ziemba could not have forged the October memo, it is hard to believe that he is still responsible for creating the September memo. The September memo lays out the recommendation referenced in the October memo: In it, Lieutenant Brian Siwicki allegedly recounts that he and others "reached the conclusion that inmate Ziemba to be permitted in the continuance in his course of litigation against our Department would not be an option." *Def. Ex. 4-A*. Ziemba may have had an opportunity to forge the September memo: Greg Kettering testified that Siwicki's signature on the September memo came from a letter sent to Ziemba in March 2010. But he still lacked the means to create it: he was still stuck in administrative segregation,[1] still did not have access to the tools necessary to execute the fraud, and still did not have someone on the outside to do it for him. Because both memos were likely forged by the same person, and because Ziemba

---

[1] At oral argument, defendants' counsel argued that Ziemba could have made the documents after he left NCI. In October of 2010, Ziemba was briefly housed at MacDougall Correctional Institute, and was then transferred to a mental health facility for several months. Ziemba brought the court's attention to the memos during that time – he quoted the memos in his amended complaint filed in early 2011. Defendants' counsel posits that Ziemba could have had greater freedom once he left NCI. But defendants' counsel offered no evidence that Ziemba had greater access to computers, photocopiers, scissors, and other supplies after he left NCI. Defendants have the burden to prove fraud by clear and convincing evidence, and they have not offered any evidence that Ziemba had the ability to doctor documents either at NCI or in other facilities.

6

did not have the means to forge either, I also find that Ziemba did not forge the September memo.

### C. *The Submission of Fraudulent Documents*

Regardless of the memo's authorship, Ziemba would still have acted in bad faith if he submitted documents to this court that he knew to be frauds. Ziemba claims that he received the documents from a corrections officer who wanted to warn Ziemba of the conspiracy brewing against him. Ziemba has long had an especially strained relationship with NCI officers, and this simmering tension primed him to believe that officers might scheme to harm him. In other words, the memos confirmed Ziemba's suspicions. Ziemba testified that he thought the memos were real when he submitted them, and I find his testimony credible.

In sum, the government has not proven by clear and convincing evidence that Ziemba authored the fake memos, nor that he knew they were forgeries when he brought them to the court's attention. Because they have not met their burden, their motion for sanctions, in particular their request that I dismiss the complaint in its entirety, is denied. However, because both memos are clearly forgeries, I will order that any portion of Ziemba's complaint that relies upon them is barred as a matter of law.

### *Remaining Grounds for Dismissal*

In their motion, defendants raised three alternate grounds for dismissal. I will discuss those arguments briefly here.

First, defendants argue that Ziemba cannot use this proceeding to re-open three other cases— *Ziemba v. Dzurenda*, No. 3:08cv565, *Ziemba v. Murphy*, No. 3:08cv1090, and *Ziemba v. Lantz*, No. 3:08cv1335. Because those cases were never before me, I do not have authority to reopen them. If Ziemba believes that defendants' misconduct

resulted in an unjust or fraudulent outcome, he will have to seek relief in each of those cases.

Second, defendants argue that Ziemba's request for injunctive and declaratory relief should be dismissed. In his complaint, Ziemba requests that I enjoin officials from impeding his ability to litigate. All of the alleged unconstitutional actions – the stolen documents, the intimidation, the rifling through his legal mail— occurred at NCI. Because Ziemba is no longer at NCI, I dismiss both those requests for relief as moot.

Finally, defendants request that I dismiss claims against supervisors in this case, specifically against defendants Powers, Strange, and Lajoie. Ziemba's claims against these three supervisors are limited to complaints about their failure to respond to his grievances. As an opinion from the Southern District of New York has noted, "[t]he law is clear . . . that a prison official's mere response to a grievance, by itself, is not sufficient to establish personal involvement for purposes of § 1983." *Hidalgo v. Kikendall*, 2009 WL 2176334 at *4 (S.D.N.Y. 2009). "Were it otherwise," the court explained, "virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies, and invariably the plaintiff's grievance will have been passed upon by the Superintendent." *Id.* Because Ziemba has not alleged any personal involvement of these three officials in the alleged deprivation of his rights, his claims against them are therefore dismissed.

II. Conclusion

For the reasons set forth, defendants motion to dismiss and for sanctions in granted in part and denied in part.

It is so ordered.

8

Dated at Bridgeport, Connecticut, this ___ day of March 2013.

                                                                                              _____
                                                                                              Stefan R. Underhill
                                                                                              United States District Judge